Stewart R. SELMAN and Marjorie A. Selman, for themselves and on behalf of a class, Plaintiffs,

v.

MANOR MORTGAGE COMPANY, a Michigan Corporation, Stanley J. Momot and Mary Jane Momot, individually and on behalf of a class, Defendants.

Civ. A. No. 81–73394.

United States District Court, E.D. Michigan, S.D.

Nov. 12, 1982.

D. Michael Kratchman, Detroit, Mich., Scott F. Smith, Southfield, Mich., for plaintiffs.

Alan M. Greene, Detroit, Mich., for defendant Manor.

Robert P. Hurlbert, Bloomfield Hills, Mich., for defendant Momot.

## MEMORANDUM OPINION

FEIKENS, Chief Judge.

This case is before me on defendants' motion to dismiss the complaint or in the alternative for summary judgment, and plaintiffs' motion to certify plaintiff and defendant classes.[1]  For the reasons stated below, defendants' motions to dismiss are granted, and plaintiffs' motion to certify classes is thereby rendered moot.

Plaintiffs Stewart and Marjorie Selman ("the Selmans") bring this action pursuant to the Truth In Lending Act ("TILA"), 15 U.S.C. § 1601 et seq., and Regulation Z, 12 C.F.R. § 226.1 et seq., with pendent state claims under Michigan's usury laws[2] and Michigan's Consumer Protection Act, Mich. Comp.Laws § 445.903.

The Selmans' suit against defendants Manor Mortgage Company ("Manor") and Stanley and Mary Jane Momot ("the Momots") arises out of a loan transaction consummated in 1980.  In August of that year, the Selmans approached Manor, seeking a loan of approximately $23,000, apparently for personal purposes.  Manor is in the business of arranging loans between prospective borrowers and lenders, and acted as a broker between the Selmans and the Momots, who advanced the needed funds.  This loan was secured by a "wrap-around" mortgage on the Selmans' home, junior to a first mortgage held by Standard Federal Savings and Loan Association.  The Selmans have defaulted in their payments to the Momots, and are now in danger of losing their home through a foreclosure action.

It is undisputed that the loan to the Selmans was calculated at a rate of interest greater than seven percent (7%).  At the time the Selman loan was made, seven percent was the maximum permissible interest rate for second mortgage loans to individuals in Michigan, but corporations could agree in writing to pay interest at a greater rate.  Mich.Comp.Laws §§ 438.41, 438.61, 450.1275.[3]  As part of the loan agreement

---

1. Oral argument on the motion to certify the classes was not heard by me, because both parties agreed that the need to entertain this motion might be obviated by a decision to grant defendants' motions to dismiss.

2. Codified at Mich.Comp.Laws § 450.1275, and in various locations within Titles 438 and 450, as well as common law.

3. Last year, the Michigan legislature enacted 1981 Mich.Pub.Act 125, now codified at M.C. L.A. § 493.51 et seq., which regulates second mortgage loans.  In addition to raising the maximum legal interest rate for second mortgage loans from 7% to 15%, the statute provides that these interest rate maximums apply to corporations which use the money loaned for household, family, or personal purposes. Because the Act is without retroactive effect,

reached with Manor and the Momots, the Selmans agreed to incorporate so that the 7% limit could be avoided. Their corporation, Stewart R. Selman and Marjorie A. Selman, Inc. ("the Selman corporation"), is the named borrower in the loan agreement.

The Selmans quitclaimed their house to the Selman corporation and received the proceeds of the loan from it. Shortly after the loan closing, the Selman corporation was dissolved with Manor's assistance. The Selmans contend that defendants' requirement that they incorporate as a condition to the loan is part of an illegal scheme to evade the usury statute.

The Selmans also contend that the loan disclosure statements violated TILA. Specifically, they claim that defendants violated TILA by calculating the loan's "annual percentage rate" on an amount which included the Selmans' first mortgage, although that full amount was not advanced, by improperly including certain charges in the "amount financed," and by understating amounts which should have been reflected in the finance charge.

Defendants argue that the Selmans' loan does not fall within TILA, because TILA excludes loans to corporations from its coverage. The Momots alone also say that the TILA claim against them should be dismissed because they are not "creditors" within the meaning of TILA.

Section 1603 of TILA provides, in pertinent part:

[This title] does not apply to ... credit transactions involving extensions of credit for business or commercial purposes, *or to government or governmental agencies or instrumentalities, or to organizations.* 15 U.S.C. § 1603 (emphasis added).

The term "organization" is defined in the statute to include "corporation(s)." 15 U.S.C. § 1602(c); *see also* 12 C.F.R. § 226.-2(y).

■ Since the Selman loan was concededly to a corporation, at least in form, the Selmans do not state a claim under TILA. This is despite the fact that the Selman loan might well have been a "consumer credit transaction" within the meaning of TILA.[4]

The conclusion that the Selman loan is outside TILA is buttressed by two official staff interpretations of TILA[5] prepared by the Federal Reserve Board, which state:

"The exemption for transactions in which the borrower is not a natural person applies, for example, to loans to corporations ... regardless of the fact that a natural person may guarantee or provide security for the credit." Official Staff Interpretation, Federal Reserve Board, 46 Fed.Reg. 50288, 50297 (October 9, 1981).

"[C]redit to corporations is excluded from the coverage of Regulation Z, *regardless of the purpose of that credit.* Moreover, the fact that an individual might guarantee the loan or use his residence as security for the loan will in no way change the status of the transaction with respect to Regulation Z." Federal Reserve Board Letter No. 572 (Fed.2d 1972, *reprinted in* Truth In Lending Special Leases-Correspondence, April 1969 to October 1978, paragraph 30, 801 at 350 (CCH 1979) (emphasis added).

■ In sum, even if a loan may constitute a "consumer credit transaction" under § 1602(h) of the Act because natural per-

---

however, its passage has no direct bearing on the Selman loan.

4. A "consumer credit transaction" is defined in § 1602(h) as

"one in which the party to whom the credit is *offered or extended* is a natural person, and the money, property, or services which are the subject of the transaction are primarily for personal, family, or household purposes." 15 U.S.C. § 1602(h) (emphasis added).

Even though the Selman loan was made to the Selman corporation, credit was "offered" to

Mr. and Mrs. Selman, who apparently used it for personal purposes.

5. Cited by Honorable Charles W. Joiner, a judge of this District, in *Horowitz v. Mutual Mortgage Company,* Civil Action No. 81–60256 (E.D.Mich. April 1, 1982), a case with facts similar to the one at hand, and by Honorable James Harvey, also of this District, in *Burgins v. Salem Mortgage Company,* Civil Action No. 82–10056 (E.D.Mich. July 12, 1982).

sons were offered credit and used it for personal purposes, so long as the credit was actually "extended" to a corporation, TILA does not apply.

Plaintiffs urge, however, that the corporation formed for the purpose of procuring the loan at issue here was not in fact a valid Michigan corporation, and that therefore the TILA exclusion does not apply to them. The Michigan courts have not yet decided whether corporations formed at the behest of a lender to avoid the usury laws are valid or not. In the absence of any directive by Congress in TILA to look beyond the facial validity of a corporation, I accept the Articles of Incorporation granted to the Selmans as creating an "organization" which comes within the above-mentioned exception to TILA.

Thus, I dismiss the Selmans' TILA claims without prejudice. Should the Michigan courts conclude the Selman corporation was not valid, I will hear the Selmans' case against Manor on the merits.

Although the Momots are, like Manor, entitled to dismissal because of the TILA exclusion which applies to borrowing corporations, I dismiss the claim against them on the alternative ground they raise, with prejudice.

Regulation Z to TILA provides:

"Creditor" means a person who in the ordinary course of business regularly extends or arranges for the extension of consumer credit, or offers to extend or arrange for the extension of such credit, which is payable by agreement in more than four installments, or for which the payment of a finance charge may be required, whether in connection with loans, sales of property, services, or otherwise .... 12 C.F.R. § 226.2(s).

A person regularly extends consumer credit only if it is extended more than 25 times (or more than 5 times for transactions secured by a dwelling) in the preceding calendar year. If a person did not meet these numerical standards in the preceding calendar year, the numerical standards shall be applied to the current calendar year. 12 C.F.R. 226.2(a) n. 3.

Only "creditors" are required to make disclosures under TILA. 12 C.F.R. 226.8(a).

The Momots have sworn by affidavit that their loan to the Selman corporation was the only extension of consumer credit arguably covered by TILA made by them in 1980. No counter-affidavit has been presented. I find that the Momots do not fall within the definition of "creditor" for the purposes of TILA, and that consequently no claim thereunder has been stated against them.

Finding that the Selmans have failed to state a cause of action under TILA, I also dismiss their state claims, without prejudice. Those state claims were here solely by virtue of pendent jurisdiction; in the absence of a federal claim, I am without power to hear them. *United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

### ORDER

This order is entered *nunc pro tunc* as of November 2, 1982.

IT IS ORDERED that defendant Manor Mortgage Company's motion to dismiss plaintiffs' Truth In Lending Act claim, 15 U.S.C. § 1601 *et seq.,* is hereby GRANTED, without prejudice.

IT IS FURTHER ORDERED that plaintiffs' pendent state claims against Manor Mortgage Company be DISMISSED without prejudice in the absence of federal question jurisdiction.

IT IS FURTHER ORDERED that the motion to dismiss made by defendants Stanley J. and Mary Jane Momot is hereby GRANTED with prejudice with respect to plaintiffs' Truth In Lending Act claim, but without prejudice regarding the pendent state claims brought against the Momots.

A memorandum opinion on which this order is based will follow.